and Mr. Rice is going to go first. I'm sorry, Mr. Smullin. Right. Got it. Okay. You may proceed when you're ready. May it please the court. As this court is aware... Please introduce yourself. Oh, I'm sorry. Dan Smullin for the Plaintiff Appellant. Thank you. Chad Osterhout. May it please the court. As the court's aware, in October of 2019, there was a jury trial in the Eastern District of Oklahoma. The jury trial involved claims of excessive use of force by law enforcement, particularly Kenneth Morgan, who was the undersheriff of LeFlore County at the time. The jury returned a verdict in that matter of $3 million compensatory damages and $1 million punitive damages. District judge issued a remediator of that $4 million verdict down to $2 million compensatory, $1 million punitive damages, and the Plaintiff Appellant accepted that remediator. This appeal arises out of the matter. Specifically, in that post-judgment collection process, Plaintiff Appellant argued that the county insurance administered through ACOSTIG is a policy of insurance that covered the damages that the jury awarded Mr. Osterhout, specifically with respect to the compensatory damage claim and the $2 million compensatory damage award. The district court evaluated the policy of coverage and determined that it was unambiguous and that the language was clear. This appeal arises out of that decision by the district court. The issues on appeal are whether or not, specifically, the district court erred in granting summary judgment in favor of ACOSTIG, whether the district court erred in concluding that the amended judgment against Morgan is excluded from coverage under the liability coverage agreement, and three, whether the district court erred in concluding that Oklahoma's reasonable expectation doctrine is inapplicable to the coverage determination. Essentially, what we have here is the county insured plan member, through ACOSTIG, claiming that despite providing defense throughout the entire four years of litigation, that after a jury awards a verdict against the plan member, ACOSTIG takes the position for the first time in that period of four years and claims, look, no coverage exists. Didn't it reserve its rights under the policy? It did reserve its rights under the policy, but particularly what's interesting in this case, as opposed to any other insurance claim that you'll ever see where someone reserves their rights, what they do is they send the plan member a letter in the beginning, and it says, hey, you may have coverage, you may not have coverage. We don't know yet. And that's the position they maintain throughout the litigation until a jury awards a verdict. And the policy requires them to inform the plan member immediately after the claim has been presented whether or not coverage is going to exist or not. They do not do that in these cases. They simply leave it ambiguous with the plan member in the very beginning. So as far as a reservation of rights go, I fully understand that issue. But under this case, they're not telling the defendant or the plan member why you have coverage or why you don't have coverage. And in fact, in this case, what's incredibly interesting to me is... Is that really a mystery? We have an excessive force complaining against the officers. The insurance company's providing the defense, and if he gets a favorable jury verdict, the policyholder's been covered. And I suppose the jury could have even found that the force was reasonable, which would be then covered by the policy, right? Well, there would be no... That's the whole point of why the policy is illusory. There is no legal cause of action for an officer's reasonable use of force. The defendant and the appellee is trying to maintain, even to this court, this is what they quote. They say it specifically. The policy permits law enforcement liability coverage for those acts which reflect the reality of modern law enforcement. However, those acts must be within the bounds of, quote, reasonableness when judging the force used in a particular act. Thus, law enforcement personnel must act with reasonable force for their potential acts to be covered. There is no legal cause of action against an officer acting within the scope of his employment for a reasonable use of force. That adds to the illusory nature of the contract. So you're saying that a contract, a law enforcement contract, has to cover unconstitutional conduct by officers, no matter how outrageous? I'm saying that the expectation from reading this policy is that it covers law enforcement liability, but the way that it's being drafted with ambiguous language is designed in any constitutional claim. It's the county's policy, isn't it? It's Mr. Morgan's policy. He's an official of the county. He's the undersheriff. He's an appointed official by the sheriff. But the policy is designed, and you see that throughout the way the claims handling process happens, it's literally designed for them to decide if they want to pay or if they don't want to pay under their own circumstances. When they want to make the decision, they pay. Great. If they don't, they don't. If I were to survey insurance policies for law enforcement officials, would this policy be an outlier? In other words, would all these other policies cover excessive force, no matter how malicious? It's absolutely. Well, it's not even, there wasn't a jury determination that the act was malicious. In fact, it couldn't have been malicious. There was punitive damages. Huh? Punitive damages. Right. That was with reckless disregard of constitutional rights. The instruction was, you either find maliciousness or you find it was in reckless disregard for constitutional rights. What's critical about that is for the jury to have found that the county was liable, they had to find that it was not malicious because he was acting within the scope of his employment. So we already have a jury finding from the district court. That issue was appealed to this court, and this court upheld that decision. And so we have a jury's determination that Mr. Morgan was acting within the scope of his employment. That has gone unchanged since the verdict. And now what we have... How is that possible when they found punitive damages? Under Oklahoma law, you can be acting with an intentional act, okay? But that intentional act can be within a reckless disregard for someone's constitutional rights. And in that situation, punitive damages can apply. We're not seeking coverage of punitive damages, no question. Punitive damages routinely and have to be, under contractual language, excluded from policy coverage. But that's not this case. The punitive damage issue really is a red herring here because what the appellee is saying is, we don't cover constitutional liability. We don't cover deliberate indifference. If they wanted to exclude constitutional liability from the policy, they could have simply stated, we don't cover excessive force. We don't cover claims under 1983. Instead, it says we cover reasonable force. Which does not exist as a cause of action in any court, state or federal. Under Oklahoma law, they still do the analysis under Graham versus Conner. The use of force, even under the negligence claim, still has to be an unreasonable use of force. That's why it's a fraudulent policy. Can't you imagine coverage for other acts besides constitutional violations where this might apply? Under what use of force would there ever be a cause of action? Ask the appellee when they stand up here. What cause of action exists for a reasonable use of force by an officer? The answer is none. So you're selling a policy of insurance. It's purposely written in an ambiguous way to try to design the idea that what county would pay for coverage that says, hey, we don't cover constitutional claims? What county would pay for coverage that says, we don't pay for use of force claims? No county would pay for that. Because they would know up front, there is no coverage. But that's not what is happening here. Do you think, if there had been no punitive damages here, do you think the policy would apply? It's a red herring. It does not matter. I'll tell you why I know that. It's because if you look at the coverage letter that they sent to Morgan, this is really critical. I picked up on it last night, and I wish we'd hit on it a little bit more. But it's at the appendix at 641, and it's the third paragraph from the bottom. And this is so critical, because this is when they're explaining to Morgan in 2017 about the coverage. They say, please be advised, if any of your actions fall under any of the above exclusions and or any other exclusions that may apply, or if you're found to have acted with deliberate indifference, no coverage will be available. You don't see the term deliberate indifference anywhere in this insurance contract. But when they inform Morgan in 2017, it's like, just in case the ambiguous language isn't enough to achieve what we want to achieve, we're going to let you know, Mr. Morgan. By the way, if you're found to be deliberately indifferent, you have no coverage. The entire policy is designed to protect law enforcement for deliberate indifference, which is the standard that has to be shown before liability would ever attach. It would be like writing an insurance policy for negligence and then having an exclusion that says, but if we find that you breached your duty, there's no coverage. Except they do it even more ambiguous throughout the exclusionary language. The defendant raises these issues of, appellant hasn't shown what specifically is ambiguous. I'll give you just quickly a list. Just so I'm clear, your position, it's an illusory contract that covers nothing. If it's interpreted the way they want it to be interpreted, it covers no law enforcement actions. There is no use of force that it would cover. And if they wanted to be clear and unambiguous, they would say, this policy doesn't include use of force coverage. This policy does not include violations of citizens' constitutional rights. But it doesn't say that. It goes through all this language about how we do cover force, but the force has to be reasonable. And all of this other language, which is designed to create the impression to a plan member that it does cover an unlawful use of force, so long as that officer is acting within the scope of his employment. It obviously is not going to cover an officer who's off duty, who goes out, beats up his girlfriend's family member. It's clearly not going to cover that. It's not going to cover criminal acts. But it's designed to cover law enforcement liability. Law enforcement liability only attaches in the context of use of force, as this court is fully aware, when there is deliberate indifference. But to sell that insurance and then to turn around and say, hey, there's a judgment, we don't cover claims under constitutional liability, I think it's a completely sham policy. Well, counsel, can I just stop you there? I thought, just reading the district court's opinion, that you were saying that there was an incompatibility between the scope of employment holding and the punitive damages holding. And you're not? I mean, you kind of mentioned it. No, I think the court misunderstands that argument when they state that specifically. Our position was a jury could have decided, A, it was malicious, or B, it was in reckless disregard for constitutional rights. If they decided A, that it was malicious, there was no way they could have found liability for the county. That's why we know what the jury determined was B, that it was in a reckless disregard for someone's constitutional rights. Essentially, what the defendants have done is they've created an illusory policy that allows them to wash their hands of any liability for unconstitutional use of force. And really, any law enforcement action, whether that's a stop, a seizure, a search, anything, because they've included language that allows them to say, hey, we interpret this saying even deliberate indifference is excluded. So yeah, it's a completely illusory, fraudulent policy, and they're servicing the vast majority of counties in Oklahoma with the policy. Any other questions? I'm going to reserve my minute and a half, if you may. Thank you. May it please the court. Doug Rice and Pete Serrata on behalf of the Association of County Commissioners of Oklahoma Self Insurance Group. Before addressing the coverage issues in this case, I think it's important to just briefly address the evidence at trial, the jury instruction, and the nature of the Association of County Commissioners, which is called ACOCIG in short. As the court's aware, the claim against Under Sheriff Morgan was for excessive damage. In 1921, when assessing whether the sizable compensatory damage award was excessive or unsupported, this court noted that Osterhout, quote, testified that he had been thrashed in the face with a flashlight and kicked in the ribs. And this court included two photographs, color photographs of Osterhout depicting the injuries to his face and to his nose. Based upon that evidence, the district court instructed the jury on punitive damages, and instructed the jury that it could award punitive damages only if it found Morgan's conduct to be malicious or in reckless disregard of Mr. Osterhout's rights. That instruction further said that conduct is malicious if it's accompanied by ill will or spite, or is done for the purpose of injuring the plaintiff, and that conduct is in reckless disregard of a plaintiff's rights if, under the circumstances, it reflects a complete indifference to their safety or rights. Notably, the jury made such a finding of punitive damages against Morgan. Additionally, I would like to note that in the court's opinion from August of 2021, this court found that Mr. Morgan has conceded from the beginning that he intentionally struck Osterhout in the face and kneed him in the ribs. This court further found that the reprehensibility of Mr. Morgan's conduct supported the assessment of substantial punitive damages. Would there be coverage if no punitive damages were awarded? It could potentially. There could potentially be coverage. The coverage analysis is a fact-by-fact and a case-by-case basis. There could be instances of excessive force that are reasonable under this policy. Mr. Sloan said there was no coverage for any excessive force. That's not true. If we look at the policy, an instance that comes to mind in reading the case law last night is, let's say, a roadblock that's dangerous. Police pursuit, they put up a roadblock that a fleeing suspect crashes into, sustains injury. That could be excessive force, the nature of that roadblock. But it may not be placed there with malice or a reckless disregard for a fleeing suspect's rights. There's the Decorte case from the Oklahoma Supreme Court that talks about this transition period where they say, we've contemplated a situation in which an officer's initial actions were within the scope of employment, but that during the unfolding of events, his actions may have gone beyond that scope. So I think the Oklahoma Supreme Court has talked about situations where you may have that type of force that originally is not unreasonable, as it's defined in this policy, that then reaches a point of unreasonableness. So your position is you can have unconstitutional excessive force, and that could still be reasonable force under the policy? Under the coverage agreement that we have here before us, yes, I believe so. And this contract is not illusory. There's, of course, multiple different types of coverage under this policy, property coverage, liability coverage. And I would note that ACOSIG did pay a portion of the county's, or did pay the county's judgment in this case, the verdict that had been rendered under the respondeat superior liability, which I'd like to address with the court in terms of that argument. But what I think is important to note is that ACOSIG is not a traditional insurance company. What ACOSIG is, it's a self-insured governmental pool made up of 74 counties in Oklahoma formed under the Interlocal Cooperation Act under Oklahoma law. And our Supreme Court in Oklahoma has recognized that the contracting parties in a governmental self-insurance pool have substantially more freedom to contract than an individual consumer with a commercial for-profit type enterprise. That's the Board of County Commissioners of Delaware County versus ACOSIG case. Notably, as a governmental self-insurance pool, the member counties themselves determine what conduct is going to be covered under the coverage agreement. They are the ones, it's an association, they're the ones that formulated ACOSIG, the counties, which includes LeFore County. Thus, we don't have the traditional unequal bargaining power or contract of adhesion that you see in the typical insurance context. Where does a street cop go for excessive force coverage? In the traditional marketplace or with ACOSIG? You know, after the district court opinion, if I'm a line officer in Oklahoma, I'd be a little worried about the scope of my coverage. If he acts in a reasonable manner and he does not act maliciously or in reckless disregard of an individual's rights, he would be covered under this policy. And we can talk about those provisions. But there would be coverage for him. But what we're looking at... It seems to me that most excessive force verdicts would not be covered. It seems like the vast majority of the cases we see where the officers lose. If an officer, and I think we've got to keep focus on the facts of this particular case, but if an officer in using excessive force acted with malice, wantonly, a reckless disregard of an individual's rights, and that was deemed to be unreasonable, there would be no coverage. Because he's going to be outside what this policy determines is the scope of employment. And those exclusions are going to apply. Our excessive force cases say no reasonable officer would believe that his conduct in these circumstances was objectively permissible. But there is a difference. And that's when we talked about, I think, Your Honor, you mentioned that you thought maybe the issue on appeal was the difference. And the respondeat superior liability under the Governmental Tort Claims Act versus what the policy provides. I think that's an apples and oranges analysis. If you're looking at applying the law, in that case, to go to the Governmental Tort Claims Act, that's a different analysis than when you're looking at coverage. Well, let me take you back to what you just said about the coverage. How does that relate to reasonable expectations? And in other words, your opposing counsel here is saying this covers nothing, basically, not the common excessive force case, I guess, that we see. That's never covered. Correct? And I mean, you just answered yes, there'd be no coverage. So how does that relate to reasonable expectations when you're buying a policy? Or you're expecting the policy to cover it? Right. We have to look at the fact, you know, this isn't, they're not purchasing a policy. This, we've got to go to ACO SIG. It's an association. These counties have gotten together. They decide what the policy language is going to be, including Leflore County. They sit on our board. The board is the county commissioners. So you're saying reasonable expectations just doesn't apply at all? It simply doesn't apply. The reasonable expectations doctrine, and my colleague Pete Serrata is prepared to talk in more depth about the reasonable expectations doctrine. But simply, that was adopted in Oklahoma, where you had this unequal bargaining power. And you had these contracts of adhesion. And perhaps you had an insured that wasn't able to determine or have any input on what their coverage was going to be. And then there was some type of expectation or representation by an agent of what may be covered under their policy. The policy is vague and ambiguous. And so the court will apply the reasonable expectations doctrine. You simply don't have that in this case because of the nature of this self-insured pool. Right. So the county got what it wanted. So its expectations were met. But so what would somebody who was an officer, what would they do to, I don't know, you use the phrase, I mean, the county has input. But how would an officer have input in your process? Well, I don't know that an officer would have input other than going to the county commissioners who would then take that to ACCO. I mean, they do determine. So the officer could go and say, the policy that you, the counties, are coming up with is insufficient coverage. Absolutely. I mean, this is, like I say, the county commissioners of the 74 counties participate in ACCO SIG. They determine what the coverage is going to be. They will amend, they will revise this coverage agreement on a year to year basis, depending on what they're seeing in their counties, what they want to cover, what they don't want to cover. And they are free to decide what they want to cover and what they don't want to cover. And in this instance, when we look at the contractual analysis, as the court is aware, under well-settled precedent, insurance policy is a contract. We look at the contract language. That's AutoMax Hyundai versus Zurich. The court accepts the contract language in its plain, ordinary, and popular sense, Broome versus Wilson paving and excavating. And if it's without ambiguity, uncertainty, it's enforceable as it is issued by the insurer. That's Dodson versus St. Paul. What we have here is a policy that in numerous places excludes conduct that is malicious or reckless disregard of an individual's rights. And that's clearly what we had in this case. When we've got an award of punitive damages, it's been determined by the jury. When we look at those clear exclusions, both in the definition of scope of duty, when we look at the exclusions and the common exclusions, there's two of them. And then you look at the law enforcement exclusion. They all reference that that type of conduct, that unreasonable conduct, is excluded and is not going to be insured. And with that, I'll relent the remaining time to my colleague, Pete Serrato. Thank you, counsel. Pete Serrato, appearing on behalf of Appellee ACO SIG. Judge Ide, you are absolutely on point in questioning whether or not the Doctrine of Resuscitation applies. The Oklahoma Supreme Court recognized the doctrine for the first time in the case of Max True Plastering versus U.S. Fidelity and Guarantee Insurance Company. The court, in recognizing that doctrine, was concerned specifically with the inequality of bargaining power between commercial insurers and consumer insurers. It's the same as it is today. A commercial insurer solely writes the policy. They determine what terms are involved, what coverage is available. They offer it to the insurer at a premium, at a take-it-or-leave-it basis. For that reason, if the insurer or its agent says or promises something that creates a reasonable expectation of coverage and that the policy does not provide, the doctrine allows the courts the limited freedom to go and conform the policy. That is absolutely inapplicable here, because in this case, as Mr. Rice has already explained, ACO SIG is both the insurer and the insured. The coverage agreement now before the court is a careful balancing act determined, negotiated, and constructed by the 74 member counties to balance their taxpayer-funded resources, their mutual pool, in order to meet all 74 counties' various liability obligations. So for that reason, if the court were to apply the doctrine of reasonable expectations, it would necessarily and completely change the bargain and the agreement that was reached and it is exemplified in the coverage agreement now before the court. That not only changes what the parties intended, but it could potentially threaten the viability of the pool itself. The counties have a delicate balancing act to ensure that their liabilities are covered with what resources they have, and those resources are finite. So if a line officer wants excessive force coverage, he has to go in the market and obtain a different policy at his own expense? Well, coverage is available, and we would disagree with opposing counsel in saying that no coverage is available at all. Coverage that is not found to be in reckless disregard or malicious, we also exclude claims based on allegations of sexual abuse, things that a reasonable officer, even a mistaken one, should not be doing. Something that we expect better from our officers. Conduct that on a civilian, and I see that my time is up. Go ahead and finish your thought and you can sit down. The conduct we're talking about is absolutely reprehensible. That is what this court has previously found. So in order to buy plaintiff's argument, we must essentially decide that that conduct that is reprehensible, that is inherently unconstitutional, that was either malicious or in reckless disregard, should somehow be insurable. Thank you, Your Honor. Thank you, counsel. You have some rebuttal? Just briefly, Your Honor. Thank you. I think that it's funny that they raised the sexual assault issue, because if you look at the policy in this case, they're explicit. We don't cover sexual assault. Here's what sexual assault is. And they go on and on about how it's crystal clear, it's unambiguous. No question, they don't cover sexual assault. But again, going back to if they were wanting to create a clear and unambiguous contract, they could have put language that said, we don't cover constitutional liability for an officer's use of force. We don't cover liability under 42 U.S.C. 1983. And the idea that a county is negotiating on the best interest of their, could be hundreds or thousands of employees who are not at a bargaining table, right, who do not understand the language, do not have a choice as to what language is placed into this policy, those are the ones being affected. And the taxpayers who are paying for a fraudulent, completely illusory policy. Are you saying that the ambiguity is created because the policy does not clearly state what's excluded? Yeah, well, one, if you look at, for example, general liability. We cover judgments, verdicts, awards. I know you're almost out of time, but what's the ambiguous term? When you take that term, for example, and then you compare it to, I have a list of them here, I'll just give them to you. The language about general liability, when you compare that to the exclusions, okay, they're completely, they're eviscerated by the exclusions. But you would never really understand that language because the term reckless is being placed into the language, which the Tenth Circuit of the Supreme Court has held across the board. That is, by its very nature, an ambiguous term. So what does the policy provide coverage for? The only thing he could come up with was some kind of roadblock scenario. That's not a use of force. What, I mean, this court is well aware of what the standard is to attach constitutional liability and even liability under the government tort claim. And in every single one of those scenarios, there has to be an unreasonable action. There has to be an unreasonable use of force. And under this policy, every one of those uses of forces are excluded. No causes of action exist for reasonable use of force. So the policy is really illustrating providing no coverage at all for the officers. But given the facts in this case, how could the officer possibly believe that he would have insurance coverage for beating up this guy who was standing there with his hands up with a flashlight? The officer's position was that Mr. Morgan was at a high-speed, they were in a high-speed chase, that he got off, that Mr. Osterhout came at him in an aggressive manner, and that he used force. He admits to punching him in his face. He admits that Mr. Osterhout's hands being at his side when he punches him. He explains that he was kneeing him in the ribs so that he could get control and handcuff him. And notably, Morgan was charged on multiple cases. But this was not one of those cases in which criminal charges were brought. Couldn't they have been? I don't think they could have been under this scenario. I don't think they could have been. I think that that's why it wasn't picked as a criminal case for him to be prosecuted. But to simply look at the language of this policy. I can't remember, did Morgan testify? In this case? Yes, ma'am. And so did his partner. But what is really terrifying is the idea that in 95% of our counties in Oklahoma, we have this policy of insurance that these county commissioners believe and have been telling law enforcement officers, this provides you coverage. Law enforcement liability coverage. But the reality of it is, is it's just a fraudulent policy that's designed. And who benefits from it? The single law firm, the only law firm that's ever picked to defend the cases. They will always receive their cost of defense fees. Always. And what this policy really is, is a policy that just provides cost of defense only. And it certainly doesn't work that way, but that's the effect of it. All right, well, thank you, counsel. We appreciate the arguments. They're very clearly stated. Your excuse in the case will be submitted.